## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

VISALUS,  INC.,

     Plaintiff,               Case No.

v.                              Hon.

TINA HOCKMUTH and       **COMPLAINT**
KEN HOCKMUTH,

     Defendants.

---

Peter R. Bulmer
Jackson Lewis P.C.
150 N. Michigan Ave., Suite 2500
Chicago, IL  60601
(312) 787-4949
BulmerP@jacksonlewis.com

Kenneth M. Wentz III
*\* admission pending\**
JACKSON LEWIS P.C.
10050   Regency   Circle,   Suite   400
Omaha, Nebraska 68114
(402) 391-1991
wentzk@jacksonlewis.com

Christina A. Daskas (P52757)
Jackson Lewis P.C.
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900
daskasc@jacksonlewis.com

*Attorneys for Plaintiff*

---

Plaintiff, ViSalus, Inc. ("ViSalus" or the "Company"), by its attorneys, and for its Complaint against Defendants Tina Hockmuth and Ken Hockmuth (collectively "Hockmuths") states as follows:

## PRELIMINARY STATEMENT

On August 15, 2011, the Hockmuths became independent distributors of ViSalus weight management products, nutritional supplements, and energy drinks. When enrolling to become independent distributors of ViSalus products, the Hockmuths agreed to be bound by the ViSalus Independent Promoter Terms of Agreement, including a non-solicitation clause prohibiting the Hockmuths from recruiting ViSalus distributors to join ViSalus' competitors for one year after terminating their relationships with ViSalus.

In approximately March 2014, the Hockmuths voluntarily terminated their relationships with ViSalus. Shortly thereafter, ViSalus discovered that the Hockmuths', while still bound by and in direct violation of the foregoing agreements, were distributing and marketing on behalf of a direct competitor of ViSalus, and were attempting to recruit ViSalus distributors to join a competitor. ViSalus filed suit against the Hockmuths in the United States District Court for the Eastern District of Michigan, Case No. 14-cv-11762-JEL-PJK, alleging breach of contract and tortious interference with business relationships. On June 10, 2014, the Hockmuths entered into a Settlement Agreement with ViSalus which, among

2

other things, prohibited the Hockmuths from soliciting or recruiting ViSalus distributors or employees to work for competitors until March 9, 2015, in exchange for dismissal of the aforementioned lawsuit.

Since executing the Settlement Agreement in June 2014, the Hockmuths have continued to actively and directly solicit and recruit ViSalus distributors and employees to terminate their relationship with ViSalus and work for ViSalus competitors. The Hockmuths have willfully failed and refused to comply with several terms of the Settlement Agreement and have ignored written demands for compliance. ViSalus has incurred, and will continue to incur, damages as a result of the Hockmuths' breaches of the Settlement Agreement and tortious interference with its business relationships.

## PARTIES, JURISDICTION, AND VENUE

1.     This is an action asserting claims for breach of contract and tortious interference with business relationships.

2.     ViSalus is a corporation organized under Nevada law with its principal place of business located at 1607 East Big Beaver Road, Suite 110, Troy, Michigan 48083.

3.     On information and belief, Tina Hockmuth and Ken Hockmuth are husband and wife, and citizens of the State of Iowa who maintain a residence at 16688 Tanglewood Drive, Clive, IA  50325-2550.

3

4.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(a)(1) based on the parties' diversity of citizenship, and the amount in controversy exceeds $75,000.   This Court has personal jurisdiction over the Hockmuths because they contractually consented to the jurisdiction of this Court for enforcement of the Settlement Agreement and availed themselves of the laws of the State of Michigan.

5.     Venue lies in this district pursuant to the forum selection clause in the parties' Settlement Agreement and because ViSalus' corporate headquarters is located in this district.

## FACTS - COMPANY BACKGROUND

6.     ViSalus is a network marketing company that sells weight management products, nutritional supplements, and energy drinks.   ViSalus markets its products under the "ViSalus" name in North America, and under the "Vi" name in Europe.   As a network marketing company, ViSalus products are not sold through retail outlets. Instead, ViSalus relies on a network of distributors (or "promoters") to market and sell ViSalus products directly to the public.

7.     Founded in 2005, ViSalus is a company engaging in network marketing (or "direct selling").   A key component of ViSalus' success has been the Company's ability to build and maintain a vast network of distributors who both market and sell ViSalus products and recruit additional distributors to join the

4

ViSalus team.  This distribution network is the channel through which ViSalus ultimately sells its products to end users.

8.    ViSalus and its promoters rely heavily on social media and text messaging to build distributor networks, and to market and sell ViSalus products.

9.    To encourage growth of product sales through the recruitment of other distributors, ViSalus developed a program, known as the Rising Stars program, designed to increase the visibility and exposure of distributors within the Company. Through the Rising Stars program, as distributors meet certain goals designed to measure the sales success of the network of distributors that they bring to ViSalus, they are assigned a "rank" to recognize their success.   The metric used to measure a distributor's sales success and assign ranks is known as Growth Qualification Volume ("GQV").   The GQV measures the volume of sales generated by the distributor's team.  A distributor's success in recruiting, training, and developing other distributors – which is known as their "downline network" – is measured by the number of distributors that they directly recruit and the rank achieved by those distributors.

10.    Under the Rising Stars program, a distributor is first assigned the rank of Associate.  As the distributor achieves certain goals in the size of their GQV per month and the size and quality of their downline network, a distributor can advance to Director, Regional Director, National Director, Presidential

Director, and Ambassador. At the Ambassador level, a distributor can continue to progress through additional ranks such as One Star, Two Star, Three Star, Four Star, and Five Star Ambassador. Advancement through these ranks correlates with increased sales of ViSalus' products to customers, both by the distributor and through his or her downline network. A Five-Star Ambassador is someone who has helped five people achieve Ambassador Rank. Upon achieving a Five-Star Ambassador, distributors receive access to additional confidential and proprietary information, and periodically sign various non-disclosure agreements to receive access to various types of information.

## <u>HOCKMUTHS' RELATIONSHIP WITH VISALUS</u>

11. On or about August 15, 2011, the Hockmuths joined ViSalus as distributors.

12. The Hockmuths rapidly advanced within ViSalus, with Tina Hockmuth achieving a Five-Star Ambassador level and Ken Hockmuth achieving the rank of Presidential Director.

13. As of March 2014, Tina Hockmuth had a downline network of 16,300 distributors and 24,850 customers, while Ken Hockmuth had a downline network of 1,755 distributors and 152 customers.

14. Upon joining ViSalus in 2011, the Hockmuths were provided with a Non-Solicitation Agreement, the terms of which they consented to in

enrolling as ViSalus distributors.

15.     Throughout their time as ViSalus distributors, the Hockmuths executed several other non-solicitation and nondisclosure agreements.

16.     On March 17, 2014, Tina Hockmuth publicly announced her resignation from ViSalus. Thereafter, the Hockmuths began openly working with a competitor, and publicly encouraged other ViSalus distributors to join them in working for a competitor.

17.     Throughout March 2014, the Hockmuths aggressively solicited ViSalus distributors to work for a competitor.

18.     ViSalus filed Complaints against the Hockmuths in the United States District Court for the Eastern District of Michigan (Case No. 5:14-cv-11762-JEL-PJK) and in the Iowa District Court for Polk County (Case No. LACL129952).  ViSalus eventually dismissed the Iowa action and proceeded with its action before this Court.

19.     In May 2014, while the lawsuit was pending, the Hockmuths ended their relationship with the company in favor of whom they terminated their ViSalus relationship. The Hockmuths then began an affiliation with Vemma, which is a ViSalus competitor.

20.     On June 10, 2014, the Hockmuths executed a Settlement Agreement which, among other things, prohibited them from directly or indirectly

contacting, soliciting or recruiting ViSalus promoters or employees to work for, or distribute the products of, any ViSalus competitor until March 9, 2015. A true and accurate, redacted copy of the Settlement Agreement is attached hereto as Exhibit A. Specifically, in Paragraph 2 of the Settlement Agreement, the Hockmuths promised:

> Prior to midnight on March 9, 2015, the Hockmuths each agree that s/he will not, directly or indirectly, whether in person, electronically, by telephone, via e-mail, orally, in writing, via social media (including Facebook, LinkedIn, or other media), or by use of a third party or any third party's websites/blogs/social media, initiate contact with, solicit or recruit or attempt to solicit or recruit, any person who at that time is a ViSalus employee or promoter. To the extent a ViSalus employee or promoter receives a social media post through a third party that is not at the explicit or implicit direction of one of the Hockmuths, however, or through circumstances beyond the Hockmuths' control, such posts or messages would not be deemed a breach of this Agreement. However, in the event a ViSalus employee or promoter on his or her own initiative contacts or initiates contact with the Hockmuths, without any direct or indirect influence by the Hockmuths, the Hockmuths may speak with that employee or promoter.

21. The Settlement Agreement also required the Hockmuths to remove or "unfriend" all ViSalus promoters or employees from their list of contacts or "friends" on all social media accounts. Specifically, in Paragraph 4 of the Settlement Agreement, the Hockmuths promised:

> Hockmuths each agree to use their best and good faith efforts to immediately remove or "unfriend" all known or obvious employees and promoters of ViSalus from their roster of contacts or "friends" on their social media accounts (including Facebook, LinkedIn, or other

media).  Prior to midnight on March 9, 2015, the Hockmuths each agree that s/he will not add known ViSalus employees or promoters to their social media contacts and will decline any requests from known employees or promoters of ViSalus to be added to the Hockmuths' contacts.  There shall be no breach of this Agreement, however, if the friend request is unclear as to whether the person is a ViSalus employee or promoter and the Hockmuths are not otherwise aware of such person's status as an employee or promoter of ViSalus.  If, after the Hockmuths add a contact, the Hockmuths discover the contact is a ViSalus employee or promoter, the Hockmuths agree to immediately remove that individual as a contact.  To facilitate this removal of known ViSalus distributors from the Hockmuths' social media accounts, within twenty four hours of the effective date of this Agreement, the Hockmuths agree to provide their Facebook contact list (the "Friends List") to a mutually agreed upon corporate representative of ViSalus for five (5) hours to review and identify any current ViSalus employees and promoters who may be on their list and should be removed pursuant to this Agreement.  Within twenty-four hours of its review of the Hockmuths' Friends List, ViSalus will provide the Hockmuths with the names of persons on their list who are ViSalus distributors and should be removed from the Hockmuth's list.  ViSalus agrees to keep the Hockmuth's Friends List confidential, and will not disclose it to any third parties, and further agrees that the Hockmuths' Friends List may not be used by ViSalus for any reason except to identify employees and promoters of ViSalus to be removed from the Hockmuth's Friend's List.

22.     Prior to reaching agreement on Paragraph 4 of the Settlement Agreement, the Hockmuths never revealed the enormity of the list of "friends" they would be disclosing to ViSalus.  Instead, in bad faith, they insisted on a five-hour limit on the time allotted to ViSalus to review the as-yet undisclosed "friends" list, knowing that such time allotment was wholly inadequate and thus would enable  them to hide many prohibited names from review by ViSalus.

23.     On August 8, 2014, the Hockmuths provided ViSalus with

access to their Facebook "friends" lists. Tina Hockmuth's list contained *4,999* individuals and Ken Hockmuth's list contained *2,472* "friends."

24.    In the five hours allotted, a representative of ViSalus was able to review only 333 of the individuals on the Hockmuths' "friends" lists. Of the 333 "friends" reviewed, 71 (*i.e.*, 21%) were either promoters or employees of ViSalus, evidencing the Hockmuths' non-compliance with the terms of the parties' Settlement Agreement.

25.    On August 8, 2014, counsel for ViSalus provided the Hockmuths' attorney with a list of the 71 ViSalus promoters or employees who remained on the Hockmuths' "friends" lists. ViSalus' counsel also noted that, given the Hockmuths' 7,471 "friends" and the fact that 71 of the 333 individuals ViSalus was able to review were current ViSalus promoters or employees, ViSalus would need more than five hours to review the Hockmuths' "friends" list and ensure their compliance with the Settlement Agreement. The Hockmuths' did respond to this request.

26.    ViSalus provided the list of ViSalus promoters and employees still "friends" with the Hockmuths; but, in further violation of the Settlement Agreement, the Hockmuths failed to provide ViSalus with a written declaration that they removed all remaining ViSalus promoters or employees from their social media accounts.

10

27.     Since the Hockmuths' "friends" lists are private, ViSalus has no ability to determine whether the Hockmuths removed the 71 social media contacts it identified as ViSalus promoters or employees.  Nor does ViSalus have the ability to determine if any other ViSalus promoters or employees remain on the as-yet unreviewed portions of the Hockmuths' "friends" lists.  This information lies exclusively within the Hockmuths' control.

28.     ViSalus has reason to believe the Hockmuths' social media contact lists continue to contain more than 71 ViSalus promoters or employees, and that the Hockmuths' have not deleted those ViSalus promoters and employees identified as part of the Agreement.

29.     The Hockmuths have not responded to ViSalus' requests to remove the 71 ViSalus promoters identified and to provide access for the complete review as set forth in the Agreement.

30.     The terms of the Settlement Agreement explicitly state that the Hockmuths are prohibited from utilizing social media to promote their business activities until they remove all ViSalus promoters or employees from their social media contact or "friends" lists and provide ViSalus with written declarations of the same.

31.     The Hockmuths willfully refused and failed to remove ViSalus promoters and employees from their social media contact or "friends" lists.

11

32.     The Hockmuths have continuously used social media to promote their business activities from June 13, 2014, to the present, despite their failure to comply with the terms of the Settlement Agreement.

33.     In addition, ViSalus has reason to believe the Hockmuths directly solicit ViSalus promoters and employees on an ongoing basis to join them in working for a competitor, both through social media and text messaging, in direct violation of the Settlement Agreement.

34.     The Hockmuths have ignored written demands for compliance with the Settlement Agreement by counsel for ViSalus.

### First Cause of Action
### Breach of Contract

35.     ViSalus repeats and realleges each and every allegation set forth in Paragraphs 1 through 34, above, as though fully set forth herein.

36.     By virtue of the conduct described above, the Hockmuths breached Paragraphs 2 and 4 of the Settlement Agreement.

37.     As a direct and proximate result of the Hockmuths' breaches of the Settlement Agreement, ViSalus has been injured and will continue to be injured through the loss and threats of continuing loss of customers, distributors and goodwill.

38.     ViSalus is entitled to recover damages from the Hockmuths in an amount to be determined at trial.

**Second Cause of Action**
**Tortious Interference with Business Relationships**

39.     ViSalus repeats and realleges each and every allegation set forth in Paragraphs 1 through 34 above as though fully set forth herein.

40.     By virtue of the conduct described above, the Hockmuth have tortiously interfered with ViSalus' business relationships with its distributors.

41.     The Hockmuths are fully aware of the business relationships between ViSalus and its distributors, and intentionally and without justification interfered with those relationships.

42.     ViSalus has been damaged and will continue to be damaged as a result of the Hockmuths' actions through the loss of its business relationships with its distributors and the loss of potential business from those distributors.

43.     The Hockmuths acted intentionally, willfully, and with reckless disregard to ViSalus' rights.

44.     ViSalus is entitled to recover damages from the Hockmuths in an amount to be determined at trial.

WHEREFORE, ViSalus respectfully prays the Court:

(a)     enter judgment against Defendants Tina Hockmuth and Ken Hockmuth for their breaches of the Settlement Agreement and their tortious interference with ViSalus' business relationships;

13

(b)     enter an order barring the Hockmuths from further breaches of the Settlement Agreement;

(c)     order the Hockmuths to pay ViSalus for the damages caused by their unlawful conduct, in an amount to be determined at trial;

(d)     order the Hockmuths to pay exemplary damages to ViSalus;

(e)     award ViSalus its costs and reasonable attorneys' fees;

(f)     award ViSalus prejudgment interest on any monetary award; and

(g)     award ViSalus such other and further relief as this Court deems just.

Respectfully submitted,

VISALUS, INC.

By:    /s/Christina A. Daskas
        One of Its Attorneys

Christina A. Daskas (P52757)
Jackson Lewis P.C.
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900
daskasc@jacksonlewis.com

Peter R. Bulmer
Jackson Lewis P.C.
150 N. Michigan Ave., Suite 2500
Chicago, IL  60601
(312) 787-4949
BulmerP@jacksonlewis.com

14

Kenneth M. Wentz III
*admission pending*
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
(402) 391-1991
wentzk@jacksonlewis.com

*Attorneys for Plaintiff*

December 16, 2014

4828-5784-9889, v. 1